IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 4:21-CR-3009 |
| vs. | |
| REBECCA MARIE HERNANDEZ, | MEMORANDUM AND ORDER |
| Defendant. | |

The defendant, Rebecca Hernandez, is set to be tried in front of this Court on one count of possessing with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Filing 1. The government has filed a notice of its intent to introduce evidence of (1) Ms. Hernandez's prior convictions, (2) photographs allegedly located on a tablet belonging to Ms. Hernandez, and (3) screenshots of text messages conversations found on the same tablet. Filing 37. Ms. Hernandez has also given the Court notice of her intent to introduce evidence of prior bad acts committed by her co-defendant, Harley DeGroat. Filing 149. This Order will address both these motions along with the government's motion in limine (filing 137).

I. BACKGROUND

To assess the relevance and probative value of the proffered evidence, one must understand the alleged factual basis of Ms. Hernandez's pending charge. According to the government, this charge arose as follows. On October 3, 2020, officers initiated a traffic stop on a vehicle traveling over the speed limit. Filing 37 at 3. Officers identified Harley DeGroat as the driver, and Ms.

Hernandez was in the passenger seat. Filing 37 at 2. During the stop, officers learned the vehicle was registered to DeGroat and had an expired registration. Filing 46 at 2. When a records check uncovered that Mr. DeGroat had an active arrest warrant, he was placed under arrest. Filing 46 at 1.

During the stop, Mr. DeGroat and Ms. Hernandez allegedly gave inconsistent statements. Filing 46 at 2. Mr. DeGroat claimed the pair had known each other for two years and were traveling from Utah to South Dakota. Filing 46 at 2. Ms. Hernandez claimed the pair had known each other for a year and were traveling from Arizona. Filing 46 at 2. Dispatch informed officers that Mr. DeGroat and Ms. Hernandez had prior drug-related convictions, and officers claim they appeared agitated and nervous during questioning. Filing 46 at 2. The officers conducted a K9 sniff search of the vehicle, which resulted in a positive alert for the presence of drug odor. Filing 46 at 2. A search of the vehicle uncovered (1) marijuana shake on the floorboard on the driver's side, (2) a black case hidden in the engine compartment containing bags of methamphetamine, empty baggies, a bag of black tar heroin, THC cartridges, marijuana, and a black Ruger .380 firearm, and (3) several tubes containing methamphetamine that were wrapped in duct tape and saran wrap. Filing 46 at 2. Officers also seized a tablet from the vehicle that allegedly belonged to Hernandez.

## II. DISCUSSION

### 1. GOVERNMENT'S 404(b) EVIDENCE

Under Fed. R. Evid. 404(b), evidence of a defendant's prior bad acts or wrongful conduct is not admissible to prove a defendant's propensity for criminal behavior. Such evidence may be admissible, however, for a purpose other than propensity, such as proving the defendant's motive, opportunity,

2

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2); *United States v. Gant*, 721 F.3d 505, 509 (8th Cir. 2013). To be admissible under 404(b), evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence; and (4) higher in probative value than prejudicial effect. *Gant*, 721 F.3d at 509.

Evidence that is admissible under Rule 404(b), however, must still pass Fed. R. Evid. 403. *United States v. Adams*, 783 F.3d 1145, 1149 (8th Cir. 2015). In other words, evidence admissible under Rule 404(b) should still be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *United States v. Anderson*, 783 F.3d 727, 745 (8th Cir. 2015) (quoting Rule 403). Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the charged offense. *United States v. Iron Hawk*, 612 F.3d 1031, 1040 (8th Cir. 2010).

(a) Hernandez's Prior Convictions

First, the government seeks to introduce three of Ms. Hernandez's prior convictions to demonstrate her knowledge, intent, and absence of mistake. Filing 37 at 4-5. Specifically, the government seeks to introduce evidence of the following convictions: (1) 2001 conviction for possession of methamphetamine for sale; (2) 2006 conviction for possession or use of methamphetamine; and (3) 2009 conviction for possession or use of methamphetamine. Filing 37 at 1.

Each of these prior convictions are relevant to material issues in this case. Here, Ms. Hernandez's general denial places her intent and knowledge

3

at issue with respect to the methamphetamine discovered in the vehicle. And the Eighth Circuit has repeatedly held that evidence of a defendant's prior possession charges—even those involving only personal use quantities—are relevant and admissible to demonstrate knowledge and intent to distribute controlled substances. See *United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019); *United States v. Logan*, 121 F.3d 1172, 1178 (8th Cir. 1997). Additionally, given that all of Ms. Hernandez's prior convictions involve her possession of methamphetamine—the same substance at issue in the current case—they are undeniably similar in kind.

However, there are issues of remoteness that the Court must weigh. The Eighth Circuit has noted that it is generally "reluctant to uphold the introduction of evidence relating to acts or crimes which occurred more than thirteen years prior to the conduct challenged." *United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011). But this does not "constitute a definitive rule." *Id*. Instead, remoteness should be determined using a standard of reasonableness, which requires the Court to examine the facts and circumstances of each case, including if the defendant was incarcerated in the years separating the prior convictions and the instant offense. See *United States v. Adams*, 401 F.3d 886, 894 (8th Cir. 2005). In some circumstances, the "13-year rule" will not apply if the defendant has spent a significant part of that time in prison. See *United States v. Escobar*, 909 F.3d 228, 242 (8th Cir. 2018).

Ms. Hernandez's 2001 conviction is well beyond the 13-year mark, having occurred approximately 20 years before the instant offense. And approximately 14 years separate the 2006 conviction from the instant offense. While records indicate that Ms. Hernandez spent several years incarcerated in the period separating these convictions and the instant offense, the Court is

4

not persuaded that this fact alone makes evidence of these convictions admissible. The time Ms. Hernandez spent incarcerated between these offenses was intermittent and involved various offenses. And even after excluding this incarcerated period from the remoteness calculation, the convictions are on the "outer limits" of relevancy. *See United States v. Shelledy, 961 F.3d 1014, 1022 (8th Cir. 2020)*. Pushing the outer limits of remoteness creates a substantial risk the jury will consider this evidence for an improper purpose. The probative value of the convictions decreases even more when considering the government has a similar conviction it can use to prove Ms. Hernandez's knowledge and intent. For these reasons, the Court will exclude evidence of the 2001 and 2006 convictions, as they are unreasonably remote and only minimally probative.

Ms. Hernandez's 2009 conviction presents a different situation. With only 11 years separating Ms. Hernandez's 2009 possession conviction from the instant offense, the Court finds that this conviction is within the bounds of Rule 404(b). Since this conviction is supported by sufficient evidence, not overly remote considering the specific circumstances of the case, and highly probative to a material issue, the Court will allow such evidence of Ms. Hernandez's 2009 conviction . . . and the Court will obviously give a limiting instruction, if requested by the defendant.

(b) Photographs from Tablet

Next, the government seeks to introduce evidence of photographs that were located on a tablet that allegedly belonging to Ms. Hernandez and was seized from the vehicle. Filing 37 at 7. Specifically, the government intends to introduce photos taken in 2017 and 2018 that depict: (1) methamphetamine packaged in clear plastic baggies; (2) approximately $2,800 in U.S. currency;

and (3) firearms. Filing 37 at 7. According to the government, these photographs "are admissible as evidence of Hernandez's motive, her knowledge of the drugs, paraphernalia, and weapons in the engine compartment, and her intent with respect to those items and the clear baggies and currency in her purse." Filing 37 at 7. The Court agrees.

As stated above, the key issue in this trial is likely to be Ms. Hernandez's knowledge of and intent as to the contraband seized from the vehicle's engine compartment. As a result, whether the baggies and currency found in Ms. Hernandez's purse were related in some way to the methamphetamine seized—or instead in her possession for an alternative purpose—is likely to be a material issue. The Court agrees that Ms. Hernandez's alleged possession of a tablet with photographs depicting the exact same type of items—methamphetamine wrapped in clear baggies, large sums of currency, and firearms—is highly relevant to her knowledge and intent, both as to the belongings in her purse and the methamphetamine seized. At the very least, such evidence is directly relevant to Ms. Hernandez's general knowledge of and familiarity with methamphetamine, firearms, and other items traditionally associated with drug trafficking.

Since the photographs depict the same type of contraband discovered in this instant case, there is no dispute this such evidence is similar in kind. Further, it is not overly remote. That the photographs were taken approximately 3-4 years before the instant offense does not automatically make them overly remote. *United States v. Nyah*, 35 F.4th 1100, 1108 (8th Cir. 2022), cert. denied, 143 S. Ct. 389. And considering they were located on a tablet Ms. Hernandez had in her possession and recently used, admission is reasonable under the circumstances. Filing 37 at 7-8.

6

In sum, these photographs are highly relevant to the material issues in this case. While this evidence is prejudicial to Ms. Hernandez—as is the case with most evidence in criminal matters—this does not mean its prejudicial effect substantially, or even generally, outweighs its probative value, especially when limiting instructions will be given. For these reasons, the Court will allow the government to introduce evidence of the photographs (*assuming that the proper foundation is laid, which may occur outside the presence of the jury*). The Court will give a limiting instruction, if requested.

### (c) Screenshots of Text Messages

The government moved to supplement its 404(b) notice with two additional screenshots found on Ms. Hernandez's tablet. Filing 135; filing 138 at 4. The government described these images as "capturing two cell phone chats that appeared to be drug related." Filing 138 at 4. However, for the reasons outlined below, the Court will exclude this evidence.

The two images provided are from May 2017. According to the government—though it is not certain from the evidence provided since screenshots can reflect conversations from any device—the photos depict conversations between Ms. Hernandez and a contact named "Ss." Filing 135. The most "drug related" content the Court could find include the following messages:

- "WTF I had to wait a min cuz they had to get more shit n give me some." Filing 135-2 at 1.

- "Are you I love you I love you to death and I don't fucking treat you like shit you want to go back to what the fuck she does it I don't

7

it's the dope right that's what it is it's the dope that's fucked up you just get up and leave me like this." Filing 135-1 at 1.

The Court is not convinced that these messages are particularly relevant or have much probative value in the present case.

According to the government, Ms. Hernandez did not meet Mr. DeGroat until approximately 2019. Filing 138 at 2. As such, there is no indication as to who Ms. Hernandez was allegedly messaging in these conversations. Additionally, when read in its full context, it is a stretch to conclude the first message is necessarily "drug related." The pertinent line of the second message—"she does it I don't it's the dope right that what it is it's the dope"—is unclear at best. Not to mention, the messages are remote in time—reflecting conversations that occurred years before the arrest. Since these photos have little to no relevance or probative value and are overly remote in time, it cannot be said that they are higher in probative value than in prejudicial effect. For those reasons the Court will exclude this evidence.

### 2. GOVERNMENT'S MOTION IN LIMINE

Finally, the government's motion in limine seeks to exclude two additional categories of evidence. Filing 137. These include (1) evidence of the potential punishment and any other collateral consequences resulting from conviction; and (2) positive or "good" character traits of Ms. Hernandez. Filing 137 at 2.

(a) Evidence of Potential Punishment and Collateral Consequences

The government seeks to exclude "any argument or evidence concerning the potential punishment Hernandez faces whether during jury selection,

8

opening, evidence presentation, and closing." Filing 138 at 8. While the Court has no indication the defendant will attempt to present this type of evidence, it is common practice for this Court to instruct the jury that any potential sentence or consequence of conviction is not relevant to their deliberations, and should not be considered by them in any way. *See United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir. 1990). The Court will give this instruction, as it always does. Accordingly, this motion is granted.

(b) Positive Character Evidence Concerning Ms. Hernandez

Additionally, the government seeks to prevent Ms. Hernandez from asking witnesses about her "accomplishments, positive character traits, or law-abiding conduct." Filing 138 at 9. The government argues that this evidence is only relevant under Fed. R. Evid. 608(b) if Ms. Hernandez testifies and places her character and/or credibility at issue. Filing 138 at 9.

Per Rule 608(b), Ms. Hernandez would only be permitted to ask witnesses on cross-examination about her "good character" if these questions are probative to her character for truthfulness *and* the witness in question has otherwise testified about Ms. Hernandez's character. In other words, under the rule, this evidence is permitted to assess the reliability of testimony that a witness has already given about Ms. Hernandez's character. Thus, whether this evidence is relevant and admissible under the rule is highly dependent on the testimony given at trial. And whether this issue will even arise is unclear, as Ms. Hernandez has indicated she does intend not present any character witnesses or evidence of this nature at trial. For this reason, the Court will deny the government's motion at this time subject to reassertion at trial if necessary.

9

(c) Character and Prior Bad Acts Evidence – Harley DeGroat

One issue raised by both parties is evidence related to Mr. DeGroat's prior bad acts. Specifically, the government's motion in limine seeks to exclude evidence of DeGroat's 2022 arrest that occurred in Tempe, Arizona, and evidence of any other acts that cannot be properly presented under the rule of evidence.[1] Filing 137. Ms. Hernandez, on the other hand, has filed a notice to introduce reverse 404(b) evidence against Mr. DeGroat, including evidence of his prior firearms convictions, proffer statements, and two arrests that occurred *after* his arrest in the instant case—one in Lincoln, Nebraska, and the other being the Tempe, Arizona arrest. Filing 149.

Reverse 404(b) evidence refers to evidence of prior bad acts by a third party, introduced by the defendant and offered to implicate the third party in the charged crime. *United States v. Brown*, 88 F.4th 750 (8th Cir. 2023). When deciding the admissibility of such evidence, the Court must consider the typical Rule 404(b) factors, including whether the evidence is relevant to a material issue and offered for a non-propensity purpose. An individual's knowledge and

---

[1] Specifically, the government's motion in limine—which will be addressed in a separate section below—seeks, in part, to exclude (1) character evidence and prior bad acts of Harley DeGroat unless offered in accordance with the rules of evidence, and (2) the alleged facts and circumstances underlying Harley DeGroat's 2022 arrest. The government's general request to exclude any character and prior bad acts evidence relating to DeGroat that is not admissible in accordance with the Federal Rules of Evidence does not necessitate a motion in limine, as the Court is already required to follow the rules of evidence. However, the Court will address this request to the extent it encompasses the government's arguments related to DeGroat's July 2022 arrest in Tempe, Arizona. *See* filing 138. As these issues are also raised by the Ms. Hernandez's notice of intent to introduce reverse 404(b) evidence, the Court will collectively address these issues in this section.

intent are material issues when he asserts he was *merely present and did not know about the contraband at issue*. *United States v. Battle*, 774 F.3d 504, 513-14 (8th Cir. 2014).

In cases involving joint possession, the knowledge and intent of a co-defendant is not necessarily relevant to a material issue of the government's case-in-chief. In other words, proving that Ms. Hernandez knowingly and intentionally possessed the substances at issue in no way requires the government to prove—or even adduce evidence as to—Mr. DeGroat's knowledge and intent. However, whether Mr. DeGroat's knowledge and intent are relevant and a material issue in Ms. Hernandez's defense is a separate question.

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence. *United States v. Holmes*, 413 F.3d 770, 774 (8th Cir. 2005) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986)). In this case, Ms. Hernandez intends to present a third-party guilt defense, *i.e.*, she intends to argue that she had no knowledge of the drugs nor did she intend to possess them, but instead, that the contraband seized belonged exclusively to Mr. DeGroat. Thus, in presenting this defense, evidence showing that Mr. DeGroat *did* have knowledge and intent as to the drugs and firearm is circumstantial evidence in support of her claim that he was the sole individual executing the crime and that she was an innocent bystander. In this way, evidence of his knowledge and intent are relevant to a material issue presented by Ms. Hernandez's defense.

This may be true even though Mr. DeGroat has pled guilty to possessing the drugs at issue in this case. According to the government, it is anticipated that Mr. DeGroat will testify that although he was involved in a drug-dealing operation with Ms. Hernandez and knew about the particular methamphetamine at issue in this case, he did not know that the drugs or a firearm were in the vehicle. Filing 138 at 2-3. As this is a classic "he said, she said," proving that Mr. DeGroat not only knew about and intended to place contraband in the vehicle, but that he was the *sole* individual involved in this conduct, are material issues in Ms. Hernandez's defense.

Still, the extent to which Mr. DeGroat's knowledge and intent are at issue in relation to contraband seized will depend, in part, on the evidence adduced at trial, including how Mr. DeGroat actually testifies. And if, as the government has alluded, Mr. DeGroat testifies on direct to his prior felonies, drug dealing activity, and drug use, the probative value of additional "bad acts" evidence offered by Ms. Hernandez may diminish, and be outweighed by the danger of confusing the issues, undue delay, or needlessly presenting cumulative evidence, making it inadmissible under Rule 403. The Court in no way intends to hold a mini-trial on any of Mr. DeGroat's prior conduct. But many of its rulings on this evidence will need to be reserved for trial, when the Court has had an opportunity to hear the evidence presented. Still, the Court can provide some insights and limitations as to particular pieces of 404(b) evidence Ms. Hernandez seeks to introduce.

### *(i) Proffer Statements*

First, the Court will not allow Ms. Hernandez to introduce statements Mr. DeGroat made in proffer statements. *See* filing 149-4. In the statements offered by Mr. Hernandez, Mr. DeGroat talks about his history of selling drugs,

"running cocaine," and stealing cars. Filing 149-4. He describes that much of this activity began when he was just fifteen. Filing 149-4 at 1. He also talks generally about other criminal conduct that occurred during his lifetime. *See* filing 149-4 at 1-2. Ms. Hernandez argues that these statements demonstrate DeGroat's "nearly 30 years of experience in distributing narcotics." Filing 149 at 5. Using the evidence for this purpose—to drive the narrative that Mr. DeGroat is a career criminal—is a classic example of propensity evidence that is not admissible under Rule 404(b). Not to mention, this conduct is highly remote, and evidence of past car thefts, assaults, civil suits, and mental health incidents—all of which are also discussed in the proffer statement offered—are simply not relevant to Mr. DeGroat's knowledge of or intent to possess the narcotics at issue in this case.[2]

---

[2] Ms. Hernandez briefly mentions that this evidence may also be admissible under Fed. R. Evid. 609(a)(2). However, Rule 609 applies to "attacking a witness's character for truthfulness by evidence of a *criminal conviction*," and the proffer statements do not appear to provide evidence of particular *convictions*. Instead, they are general statements by Mr. DeGroat about conduct he claims to have committed in the past—they may or may not have resulted in actual convictions.

Ms. Hernandez argues that the proffer indicates that Mr. DeGroat was involved in a "strawman" purchase of a firearm in 2022. If Mr. DeGroat testifies, the Court is likely to allow Ms. Hernandez to engage in a *very limited inquiry* as to prior dishonest acts referenced in the proffer. *See* Rule 608(b). Obviously, the proffer could not be introduced to substantiate the allegations of prior dishonest acts. *Id.* And a limiting instruction will be given if requested. But this inquiry *might not* be allowed depending on how Mr. DeGroat testifies and whether such inquiry would yield confusing, misleading, or cumulative evidence of Mr. DeGroat's dishonest acts in the past. *See* Rule 403.

13

### *(ii) Prior Firearms Convictions*

Next, the Ms. Hernandez seeks to introduce evidence of two firearms-related crimes that Mr. DeGroat was convicted of in 2004 and 2005. As outlined above, the Government anticipates that Mr. DeGroat will deny knowledge of the firearm that was found next to the narcotics that were seized from the vehicle. Thus, evidence that Mr. DeGroat *did*, in fact, have knowledge of the firearm, and solely placed it in the vehicle, may serve as circumstantial evidence that he was also solely responsible for the drugs. And it is clearly established that "prior convictions of firearm offenses are admissible to prove that [an individual] had the requisite knowledge and intent to possess firearms." *United States v. Adams*, 783 F.3d 1145, 1149 (8th Cir. 2015). To this extent, the convictions *may* be relevant to a material issue of Ms. Hernandez's defense (again, depending on how Mr. DeGroat testifies and the evidence adduced at trial).

However, the relevance of these convictions is substantially diminished because they occurred nearly two decades ago. This warrants exclusion for the reasons explained above. However, the Court will reserve its final ruling for trial, depending on how Mr. DeGroat testifies. Only then can the Court adequately assess the probative value and prejudicial or cumulative effect in light of the other evidence presented and testimony given.

### *(iii) June 2020 Lancaster County Conviction*

Ms. Hernandez also seeks to introduce evidence of Mr. DeGroat's 2020 misdemeanor conviction in Nebraska state court for "attempt to commit a Class IV felony—possession of a controlled substance" (methamphetamine). Filing 149 at 5; filing 149-3. As outlined above, his knowledge and intent regarding the drugs seized is likely to be a material issue in Ms. Hernandez's

14

defense. And evidence of an individual's prior possession charges—especially when they involve the substance at issue in the instant—is relevant, similar in kind, and admissible to demonstrate knowledge and intent to possess a controlled substances. *See United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019). Given the timing of this conviction, there is no danger of it being overly remote. And the prejudicial effect of eliciting Mr. DeGroat's criminal history is minimal given that Mr. DeGroat is not on trial.

For these reasons, the Court is likely to allow the defense to present evidence about this conviction. However, the extent to which this topic can be discussed is likely to be highly limited, as again, its probative value may be substantially outweighed by the danger of undue delay and needlessly cumulative evidence depending on the extent to which the government has already adduced evidence about Mr. DeGroat's prior drug convictions and drug-related activity.

### *(iv) 2022 Tempe, Arizona Arrest*

Finally, Ms. Hernandez seeks to introduce evidence of conduct involving Mr. DeGroat that allegedly occurred in Tempe, Arizona, after his arrest for the crime at issue. Filing 149 at 6. Similar to the Lancaster County arrest discussed above, Ms. Hernandez argues that this evidence may be relevant to Mr. DeGroat's knowledge and intent to possess the drugs at issue in the instant case, as he was allegedly found with large amounts of guns, narcotics, money, and stolen property. It is also alleged that he gave police false identification. Filing 149 at 6; filing 149-2. However, the current status of those charges is unclear based on the information available to the Court—but it appears that Mr. DeGroat has not been charged with any crime in Maricopa County. Filing 138 at 4.

15

In the absence of any conviction, or any charges pending, the probative value of the 2022 arrest is outweighed by the dangers of confusing the jury. *See* Rule 403. The 2022 arrest is relevant to Mr. DeGroat's knowledge and intent regarding the instance offense, for the reasons discussed above; however, based on the other suggested evidence, any discussion of Mr. DeGroat's 2022 conduct would be cumulative, and it risks confusing the issues and wasting time. *See* Rule 403.

Ms. Hernandez argues that portions of Mr. DeGroat's conduct, specifically claims that Mr. DeGroat gave police a false identification at the time of his arrest, are relevant to credibility and are probative to truthfulness and admissible under Rule 608(b). However, given the other cumulative evidence of Mr. DeGroat's prior dishonest acts, the Court is unlikely to allow Ms. Hernandez to ask Mr. DeGroat if he ever gave police a false identification. Such testimony will needlessly extend the trial, and it carries the risk of confusing and misleading the jury. *See* Rule 403. However, depending on how Mr. DeGroat actually testifies, Ms. Hernandez may be able to inquire into this alleged dishonest act, particularly if Mr. DeGroat puts his knowledge or intent at issue, or if he denies other alleged dishonest acts.

### III. CONCLUSION

As set forth above, and without prejudice to appropriate objections during the course of trial,

IT IS ORDERED:

1. The government's motion in limine (filing 137) is granted in part and denied in part.

2. The defendant's objections (filing 148; filing 161) to the government's Rule 404 evidence are sustained in part and overruled in part.

Dated this 2nd day of December, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge